Good morning, Your Honours. My name is Victoria Biswan, and I'm here for Petitioner Zohrabyan. This is the case where the petitioner is a citizen of Armenia, native of the Soviet Union, and the immigration judge had denied both asylum from Armenia, and based on a further settlement in Lithuania, and he also denied asylum from Lithuania. In regard to the firm resettlement in Lithuania, I would like to point out that petitioner had testified on a record that he had been granted temporary status, temporary residence in Lithuania, based on his marriage to Lithuanian citizen. So this is something analogous to conditional residency in the United States. It does not make him firmly resettled. Let me get the structure of the possible argument here. If he's firmly resettled in Lithuania, he can then use discrimination in Lithuania as a basis for asylum from Lithuania? That's correct, Your Honour. If he's not firmly resettled in Lithuania, he's required to rely on discrimination or ill-treatment in Armenia? That's correct. And as I look at the treatment he's received, it strikes me that the treatment he received in Lithuania was worse than in Armenia. That's correct, Your Honour. So why are you arguing that he's not resettled in Lithuania? That's correct. He's not firmly resettled, but that was the argument. No, I'm asking you, why are you arguing that? Because it seems to me that if your ultimate aim is to show past persecution on account of a protected ground, he's got a stronger argument for persecution in Lithuania than in Armenia. Okay. In regard to the Armenia, I will address the past persecution in Armenia and the well-founded fear of future persecution in Armenia. The respondent's father, he's a well-known editor of the Armenian newspaper. And I had respectfully submitted to the court copies of the recent publications and my argument, because my position is that also this court may not determine issue of the changed country conditions in the first instance under INS versus Ventura. However, this court has taken judicial notice of recent events occurring in the countries after BIA's decision. Let me ask you, what happened to him that would constitute persecution in Armenia? Okay. What I'm arguing before this court today is that the country reports... No, I'm asking you, what happened to him? In Armenia? Yes. Since he was here? At all. Period. Okay. What is his basis for past persecution of him in Armenia? Okay. The petitioner, he is a son of a well-known journalist in Armenia. And he has been subjected to the threats, to the beating, his father and the mother... Was he himself beaten? Yes, he was threatened and also the father was... No, I'm talking about him. Yes, I believe so. Yes, Your Honor. Where's that on the record? I see that he had some chemicals thrown at him when they opened the door. I see nothing in here, at least I missed it, that he was beaten. Yes. I meant that he was physically harmed. If somebody throws chemicals on you, that's a physical harm. Is that the only physical harm he suffered in Armenia? Yes, but also there was a harm to the family. Moreover, his parents, his father has been granted asylum in the United States. I understand that. I understand that. You know, that he could argue that he has imputed political opinion. The fact that at the present time the journalists are targeted and persecuted in Armenia, it's well known. Moreover, the newspaper that his father published here in the United States is also distributed in Armenia. What bad things happened to him in Lithuania? I'm asking that question because it's possible that we will agree with the IJ, or at least not overturn the IJ's determination that he's firmly resettled in Lithuania. So what bad things happened to him in Lithuania? Because if he's been firmly resettled, his only chance for asylum here is persecution in Lithuania. Okay. In Lithuania, he was beaten so that he suffered damages to his kidney. The police demanded 12,000 payoffs from him because he was not a Lithuanian foreigner. They demanded his car. They threatened to come back and to harm him again if he does not pay off them. So that's the gist of the persecution in Lithuania. As I recollect, and you may be able to help me or correct me, the first episode, the police come in and they tear up his shop. Yes. The second episode, the same policemen show up in his house. He wakes up and the policeman is standing beside him. Yes. They take him to the police station. Yes. They show him a rifle and they ask him to admit that the rifle is his. He denies that it's his. They beat him. Yes. He's later at the police station. He then goes to the hospital with blood in his urine as a result of the beating. They extort from him $12,000 in payment, $2,000 apiece. He misses a payment. They stop his car on a snowy road. Yes, Your Honor. Is that the evidence? Yes, Your Honor. Okay. And once again, his temporary residence in Lithuania is no longer valid because he's divorced from his wife because she did not, you know, like feel that she wants to endure it and, you know, like it was easier to divorce than go through life like this. Did this happen to him prior to the divorce, before and after the divorce? That piece of evidence I'm not clear on. It was during and, I guess, after. Okay. Okay. And now I would like to address the issue of the motion to reopen based on his second marriage here in the United States. And in this regard, I would like to point out that the counsel had filed a motion to reopen based on marriage. In the body of the motion, he had indicated that he would ask for additional time to supplement the record because he did not have any notices from the immigration department. And based on holding in Constantino versus INS, the petitioner's failure to submit supporting documentation does not bar reopening, whether the government either joins the motion to reopen or does not affirmatively oppose it. And in the case of the bar, the government also refused to join the motion to reopen. They did not affirmatively oppose reopening of this case. The petitioner is still married to his wife, and the Ivan Torey petition has finally been approved. He fears for his life. He cannot go back either to Armenia or to Lithuania to have adjusted. Therefore, based on reasons, you know, that I just stated, I believe that the fact that the petitioner had submitted all the applications and the evidence to the board, subsequently to file a motion to reopen, he did establish prima facie a case that he is eligible for reopening based on adjustment of status based on marriage. Okay, why don't we hear from the government, and then we'll allow you to respond. You've saved a little time. May it please the Court, Christina Periscindola for the Attorney General. As an initial matter, the Court lacks jurisdiction over several of the issues that the petitioners raised today. First of all, the Court does not have jurisdiction over the issue of whether the petitioner has a well-founded fear of persecution in Armenia, because he did not exhaust that claim before the board. The Court does not have jurisdiction over the board's denial of his motion to reopen, and the Court lacks jurisdiction over the issues that the petitioners raised that occurred after the closing of the administrative record, which was after the board denied his motion to reconsider in June 2005. In your view, what do we have jurisdiction to decide? Oh, I was waiting to get to that. The Court does have jurisdiction to decide whether the record compels a finding contrary to the immigration judges that the petitioner did have firm resettlement in Lithuania. However, that issue really is moot because the immigration judge made an alternative finding that the petitioner being from Armenia did not have well-founded fear of persecution in Armenia. So the Court really doesn't have to reach that issue. Wait a minute. That doesn't make any sense to me. I'll get back to what we may or may not have jurisdiction over. Yes. If he has found that there's firm resettlement, don't we then talk about whether he gets asylum from the place where he's been firmly resettled? Lithuania. Well, the Court has jurisdiction, yes, over that issue. But what I'm after is even – let's assume for purposes of the hypothetical for just a moment that we agree with the IJ, or at least do not overturn the IJ's decision that he is firmly resettled in Lithuania. Let's assume further that conditions have changed in Armenia such that it would be safe for him to go to Armenia. But let's assume further that he has suffered persecution in Lithuania such that he would be entitled to asylum from Lithuania. Is he entitled to asylum from Lithuania, or does he have to go back to the place from which he's now departed and is no longer living, Armenia? Your Honor, he is removable to Armenia. We can remove him to Armenia even though he's firmly resettled now in Lithuania? Just because Armenia is now safe? Yes. Because if you look at the immigration judge's opinion, and the order was – No, I'm not asking now about – I'm just asking conceptually. Let's assume that someone leaves the country because for whatever set of reasons he thinks he's been discriminated against. He may or may not have been. He firmly resettles in another country. After having been firmly resettled in that country, he suffers persecution. My understanding of the law, and maybe I'm wrong, is that he's entitled to asylum because of the persecution in the country to which he has firmly resettled, and the fact that it may be safe to go back to the country that he might have left 20 years earlier. That doesn't mean he's not entitled to asylum from the country in which he's firmly resettled. Am I wrong about that? Your Honor, if I understand correctly, you might be, and I'd like to know the authority that you're citing to because I believe, just based on common sense, if he can go safely back to Armenia, then – So he originally was from Armenia, right? Yes. And he left there because he claimed that he was persecuted. Actually, no, he did not claim past persecution of himself. He claimed that his father, who was an editor of a newspaper – Well, he left because of concerns for his safety. Whatever. I mean, he left Armenia, goes to Lithuania. Lithuania. Right, and he has all these things happen to him in Lithuania. He eventually ends up here in the United States. When he gets here, I think in this case, he applied for asylum in his application from Armenia. Yes, he listed his nationality as Armenia. However, if you look at the narrative – The application asks, where are you seeking asylum from? I thought he listed Armenia. I believe he did in his – And I think he also listed Lithuania. Your Honor, I'd like to see in the record – I'm looking at page 274 in the administrative record, and he says that he's from Armenia. That's his nationality and his nationality at birth. I don't see any box that he's checked or any listing of Lithuania, so we look to his claim, his narrative of the claimed persecution that he suffered, and everything that he has complained of took place in Lithuania. He didn't assert any persecution against him personally in Armenia. So my understanding of this was – and I have no – I'm just kind of trying to use my common sense, as you said. But so my understanding is the government, under the statutes, our government could remove somebody to any country basically that would take them and take the person. Is that right? Your Honor, actually, I'm sorry. Before I respond to your question, I just noticed something in the record, and I didn't want to respond to your previous question incorrectly. On page 275 in the administrative record, it is correct that the petitioner did claim asylum from Lithuania, not from Armenia. So it was from Lithuania that he claimed. So I'm on page 275. Yes, it's at the top of the page. It's field number 26 on the form. Okay. It says, prior address and last country of residence or country in which you fear persecution. And he lists only Lithuania. So maybe he is applying for asylum from Lithuania. That's correct. He applied for asylum from Lithuania. So I mean, it's an interesting question. I haven't sorted it through yet. Let's just assume for a minute that we determine that he's eligible for asylum from Lithuania. Your position is the government could remove him to Armenia. Yes, he is a citizen and national of Armenia. As long as the Armenian government would take him. Yes. So that's the trick, because the Armenian government would have to agree to take him. Because we would never send anybody to a country that wouldn't take him. Yes, that's correct. They may not want him because of his family connections. That is entirely possible, but, you know, the record reflects that the government changed shortly after the petitioner's father left Armenia. So, I mean, we don't know. It's outside of the scope of the record. There's nothing in the record that indicates that the petitioner would have any problems or that Armenia would not accept him. I have another question from a different angle. Can you say he's firmly resettled when he's in on a temporary basis, as long as he remains married to this woman who is the Lithuanian citizen, he can remain? That's like saying somebody coming to the United States for a specific job, all right? Can we boot him out after his time is over and done, his job is done? I think we can. I'm trying to follow the analogy. Well, if his residence in Lithuania was terminated by the divorce under Lithuanian law, then how can he have a permanent residence there? I'm not an expert in Lithuanian law, and it's possible that he doesn't. I'm not even an expert in U.S. law. But given the facts before the immigration judge at the time, the petitioner was still married, and actually there was a misapprehension of fact in the petitioner's counsel's argument today. The petitioner's divorce decree was issued on May 16, 2001, and that's in the administrative record. And he left, the petitioner left Lithuania in January 2001. So he was still married, although he might have been separated at the time, and I don't know what consequence that would have. But the immigration judge, not to belabor it, looked at, you know, the petitioner was running a business in Lithuania and seemed to have a permanent residence. We don't want to be Judge Judy. We don't want that. Okay. So what are all the indicia of resettlement in Lithuania then? Of firm resettlement? In this case, the immigration judge applied the regulation in 8 CFR 1208.15, and it says that an alien is considered to be firmly resettled if prior to arrival in the United States he or she entered into another country with or while in that country received an offer of permanent residence status, citizenship, or some other type of permanent resettlement, unless the alien establishes that he was just passing through. Or if the conditions were such that his life was so substantially and consciously restricted by the authority of that country that he, in fact, was not resettled. So what's in the record here that adds up to that regulation standard? Yes. And, in fact, this issue was fully briefed. The immigration judge even asked the petitioner to submit a brief, which is in the record, and that's the standard the immigration judge applied. And the record doesn't follow. What are the facts that support that standard? The facts that support it? Well, the petitioner had married. He had a business in Lithuania. Did he have a visa? He did, yes. That's in the record. Okay. Okay. Any further questions? Actually, you had asked what else the court does have jurisdiction over, and that would be the board's denial of the petitioner's motion to reconsider. And basically, the board did not abuse its discretion because the motion was time-barred. Okay. Thank you. Response? Yes, Your Honor. On page 275, it's true, it lists the respondent's last country of residence and the address in that country. However, on page 282, and that's the declaration attached to the application for asylum, the petitioner states that he has suffered in Armenia for my father's political activity and due to unfavorable circumstances that I was involuntarily involved in. Therefore, he suffered severe persecution, and the family suffered the persecution, and he was forced to leave. In regard to the divorce from his wife in Lithuania, it's the same standard as over here. Just because you apply, it doesn't mean that the decree would be issued immediately. You apply, it takes, you know, seven to nine months before the decree is issued that you are officially divorced from your spouse. Therefore, the petitioner and his wife, they separated before. That's, you know, he knew that there was no way that he could. Can you help me out on the legal question with which the government and I were, I think the word is at least a little bit struggling, and that is assume that someone has left a country because for what reasons seem to him good and sufficient reasons, he fears persecution or has been persecuted, he leaves that country. He then firmly resettles in another country so that he's no longer entitled in this country to asylum from his first country because he's firmly resettled. But in the country in which he's now firmly resettled, he suffers persecution that would entitle him to asylum in this country if his first country were the country where he is now living as firmly resettled. So let's assume that he applies for asylum from the second country, the country where he is now firmly resettled. Can the government deny him asylum on the ground that, well, while you may well have been persecuted in the second country, we don't think you were persecuted in the first country, and so you have to go back to the first country. Can the government do that? Yes, Your Honor, I believe so. I believe that the government can basically remove the, you know, like asylum seeker to any country, basically, that would take, you know, that person in. And that's why I think that it's very important. That's why I brought up the issue of Gafoor saying that even though the immigration judge at the time of the hearing relied on a country conditions report by the State Department that stated that there is no persecution of the newspaper and media personnel, that drastically changed. And if you looked into the country report for the last two years, you could see that, no, the media personnel and journalists and their families, they are targeted, okay? And that's why I had indicated to the court that we had filed a motion to reopen based on a country, on a changed country condition with the BIA. Moreover, I had provided the court with a copy of that motion, and I urged the court to take the judicial notice of that and to rely on Gafoor and to remand so that we could present the information as how it would affect the petitioner and the government, they could argue and show that, no, it's, you know, like it's not legitimate concerns. Okay. Any further questions on the bench? Thank you very much. Thanks both sides for your questions. Thank you. Zorabian versus Mukasey now submitted for decision. The next case on the calendar is not an argued case. I'm having trouble with the names. Avuglou versus Mukasey has been submitted on the briefs 05-70128. The next argued case, Stalker Munoz versus Mukasey. Thank you.
judges: Fletcher, Paez, Duffy